UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
LATOYA SNOWDEN,                                :
                              Plaintiff,       :
                                               :
v.                                             :          **OPINION AND ORDER**
                                               :
SUSAN SOUTHERTON, COUNTY OF                    :          22 CV 514 (VB)
SULLIVAN, and SULLIVAN COUNTY                  :
ADULT CARE CENTER d/b/a/ The Care              :
Center at Sunset Lake,                         :
                              Defendants.      :
-------------------------------------------------------------x

Briccetti, J.:

 Plaintiff Latoya Snowden brings this action against defendants Susan Southerton, the

County of Sullivan, and Sullivan County Adult Care Center doing business as The Care Center at

Sunset Lake (the "Care Center"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e; 42 U.S.C. § 1983; and the New York State Human Rights Law ("NYSHRL"), alleging

defendants discriminated and retaliated against her on the basis of race.[1]

 Now pending is defendants' motion to dismiss the amended complaint pursuant to Rules

12(b)(1) and 12(b)(6).  (Doc. #29).

 For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN

PART.

 The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

---

[1]     In the amended complaint, plaintiff alleges this action is brought pursuant to 42 U.S.C. §
1981, invokes jurisdiction pursuant to Section 1981, and alleges her EEOC Charge of
Discrimination contained allegations of Section 1981 violations.  However, plaintiff fails to
make any factual allegations or include a cause of action arising under Section 1981 in the
amended complaint.  (See Doc. #26 ("Am. Compl.") ¶¶ 65–105).  Accordingly, to the extent the
amended complaint purports to bring claims pursuant to Section 1981, those claims are
dismissed.

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and any documents attached thereto, and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.  <u>Plaintiff's Employment</u>

In 2013, plaintiff, an African American woman, applied for a nursing position at the Care Center, a County-run nursing home.  However, because of plaintiff's "prior criminal history," defendant Southerton, Acting Administrator at the Care Center who was in charge of hiring nurses, allegedly "discriminated" against plaintiff by "not offering her the position she was qualified for after learning of her prior criminal history."  (Am. Compl. ¶ 27).  Plaintiff purportedly complained to the New York State Division of Human Rights, which held a hearing and found "in Plaintiff's favor proclaiming Defendants implemented discriminatory hiring practices."  (<u>Id</u>.).  Defendants hired plaintiff "[i]mmediately thereafter."  (<u>Id</u>.).

Accordingly, beginning in 2013, plaintiff was employed by defendants as a Certified Nurse Assistant ("CNA").

II.  <u>Alleged Discrimination and Retaliation</u>

Beginning in 2018, plaintiff alleges Southerton "made several comments" about plaintiff's hair, including that "she did not like Plaintiff's hair in braids and that she likes 'real' hair better."  (Am. Compl. ¶ 32).

Around November 2019, plaintiff was assigned to a different floor of the Care Center, referred to as "Unit Four."  (Am. Compl. ¶ 33).  During her first shift on Unit Four, plaintiff was notified that other employees, Rachel Hadley and Michelle Fortin, both "Caucasian female[s]," "did not want to work with Plaintiff, and that they referred to [plaintiff] as a 'bitch.'"  (<u>Id</u>. ¶ 34).  Plaintiff purportedly "experienced discrimination based on her race and/or color as an African

American, endured derogatory remarks about her physical appearance i.e.[,] her hair, [and] harassment, specifically by Hadley and other Caucasian Nurses employed by" defendants throughout 2019.  (Id. ¶ 35).  Plaintiff claims she felt "very uncomfortable at work" when Caucasian nurses "made remarks under their breath while looking" at her.  (Id. ¶ 36).

Eventually, plaintiff complained to staffing coordinator Jason Conroy "about the remarks of her co-workers" and requested in writing that Conroy relocate her to work on a different floor. (Am. Compl. ¶¶ 37–38).  Plaintiff says she "broke down crying" while speaking with Conroy "about the on-going racial discrimination and harassment she was experiencing."  (Id. ¶ 38). Plaintiff alleges Conroy told her he would speak with Southerton, yet defendants did "nothing" as plaintiff "remained assigned to work on Unit Four with her harassers."  (Id. ¶ 39).  Plaintiff claims she began arriving late to work so that she could work on floors other than Unit Four, and that she "complained to other supervisors and members of management again requesting" to be relocated to avoid "mistreatment from her Caucasian co-workers."  (Id. ¶¶ 40–41).

Plaintiff further alleges other non-white employees were "constantly bullied, harassed and ignored by White/Caucasian co-workers and/or management."  (Am. Compl. ¶ 42).  Plaintiff also alleges Southerton showed preferential treatment to Caucasian employees by allowing white employees to wear their nails long at work but not permitting non-white employees to do the same.   Southerton also purportedly made derogatory comments to plaintiff such as "don't be ghetto" and "we don't do ghetto shit here."  (Id. ¶ 44).

In January 2020, plaintiff claims there was an incident involving several nurses at the Care Center (the "2020 Incident").  Plaintiff alleges she and another employee, Maria Cruz, were outside the facility on a break when nurse Hadley approached Cruz and began yelling at Cruz. Plaintiff contends "Hadley tried fighting Cruz that night outside during working hours."  (Am.

Compl. ¶ 47).  Plaintiff alleges she tried to calm Hadley down, that Cruz ignored Hadley, and that no physical altercation occurred.  Plaintiff allegedly reported this incident to the police, and informed "House Manager" Jennifer Tompkins "that she did not want to work on Unit Four that night."  (Id. ¶¶ 47, 50).

A few weeks before the 2020 Incident, plaintiff alleges Hadley informed Tompkins that Hadley "wanted to break Cruz's neck."  (Am. Compl. ¶¶ 48–49).  Plaintiff alleges Tompkins reported this remark to Southerton, but no action was taken in response.

On January 6, 2020, shortly after the 2020 Incident, plaintiff and Cruz were suspended from working at the Care Center.  However, according to plaintiff, no disciplinary action was taken against Hadley.  Instead, in April 2020, despite the fact that Hadley was allegedly the aggressor, the County and the Care Center allegedly brought civil service charges "against the Hispanic and African American Nurses" involved in the 2020 Incident, including plaintiff.  (Am. Compl. ¶¶ 52–53).  Plaintiff claims that during the ensuing civil service hearing, the County falsely stated plaintiff and Cruz "cast a 'Reign of Terror'" on the County.  (Id. ¶ 55).  Following the civil service hearing, on September 29, 2020, plaintiff was terminated from the Care Center; Southerton allegedly "oversaw" plaintiff's termination.  (Id. ¶¶ 58, 60).

III.    Procedural Background

On April 27, 2020, plaintiff submitted a Charge of Discrimination (the "EEOC Charge") to the Equal Employment Opportunity Commission ("EEOC").  (Doc. #26-1).  In the EEOC Charge, plaintiff checked the box for discrimination based on "race" and stated she was "discriminated against by my employer on the basis of my race (Black) when I and Maria Cruz, a

Hispanic CNA, were suspended indefinitely since January 6, 2020, but Caucasian CNA Rachel

Hadley was not suspended."  (Id. at ECF 2).[2]

On October 27, 2021, plaintiff received a "Notice of Suit Rights" from the EEOC.  (Doc.

#26-1 at ECF 5).

Plaintiff thereafter commenced this action.

## DISCUSSION

I.   Standard of Review

A.    Rule 12(b)(1)

A district court must dismiss an action pursuant to Rule 12(b)(1) "for lack of subject

matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it."  Conn.

Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021).[3]

When deciding a Rule 12(b)(1) motion at the pleading stage, the court "must accept as

true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's

favor," except for "argumentative inferences favorable to the party asserting jurisdiction."

Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).  To the

extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the district court may resolve

the disputed jurisdictional fact issues by referring to evidence outside the pleadings.  Amidax

Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).

---

[2]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case
Filing system.

[3]     Unless otherwise indicated, case quotations omit all internal citations, quotation marks,
footnotes, and alterations.

B.      Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),

a district court may consider the facts alleged in the complaint, documents attached to the

complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v.

MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  "Where a document is not

incorporated by reference, the court may nevertheless consider it where the complaint relies

heavily upon its terms and effect, thereby rendering the document integral to the complaint."  Id.

II.     Claims Against the Care Center

The Care Center argues it is not a legal entity capable of being sued because it is not a separate entity from the County.

The Court agrees.

Under New York law, municipal agencies or departments do not have the capacity to be sued.  See Omnipoint Commc'ns, Inc. v. Town of LaGrange, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); see also N.Y. Gen. Mun. Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village."). Because defendants represent the Care Center is an administrative arm of the County, and plaintiff does not dispute this, the Court concludes the Care Center is not an independent entity capable of being sued.

Accordingly, the Court dismisses the Care Center as a defendant in this action.

III.    Claims Against Southerton

Southerton argues all claims against her must be dismissed because plaintiff admitted she was employed by the County, not by Southerton.

The Court agrees as to plaintiff's claims under Title VII, but disagrees as to plaintiff's claims under the NYSHRL.

A.      Title VII

Individual defendants, "even those with supervisory liability over the plaintiff," are not subject to personal liability under Title VII.  Guerra v. Jones, 421 F. App'x 15, 17 (2d Cir. 2011)

7

(summary order).  In addition, "[w]hile the Second Circuit has yet to address whether plaintiffs may assert claims under Title VII . . . against individuals in their official capacities, many courts within" the Second Circuit "have disallowed claims against non-employer individuals sued in their official capacities because such claims are duplicative of claims against a corporate defendant."  Barbarini v. First Niagara Bank N.A., 2022 WL 623184, at *10 (S.D.N.Y. Mar. 3, 2022) (collecting cases); see also Percy v. New York (Hudson Valley DDSO), 264 F. Supp. 3d 574, 595 (S.D.N.Y. 2017) ("Nor can a Title VII claim prevail against a defendant in his official capacity.").

Accordingly, plaintiff's Title VII claims against Southerton, in her individual and official capacities, must be dismissed.

B.     NYSHRL

The NYSHRL permits liability against an individual defendant who (i) "is considered an 'employer'" under the NYSHRL, which requires demonstrating the individual has "an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others, i.e., the power to hire or fire," or (ii) aided or abetted conduct giving rise to a claim of discrimination or retaliation.  Karupaiyan v. CVS Health Corp., 2021 WL 4341132, at *8 (S.D.N.Y. Sept. 23, 2021) (quoting Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 57 (2d Cir. 2012)).  In either case, the defendant must actually have participated in the conduct giving rise to the claim.  See Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004).  However, "an individual cannot aid and abet their own discriminatory conduct."  Boonmalert v. City of New York, 721 F. App'x 29, 34 (2d Cir. 2018) (summary order).

Here, plaintiff plausibly alleges Southerton was an employer under the NYSHRL because she was in charge of hiring nurses.  Further, Southerton allegedly participated in the conduct

giving rise to plaintiff's claim by making derogatory comments towards plaintiff, permitting only white employees to keep their nails long, and failing to remediate plaintiff's complaints of discrimination.

Accordingly, because plaintiff alleges Southerton is considered an employer under the NYSHRL, and that Southerton participated in the conduct giving rise to plaintiff's claims of discrimination, plaintiff may pursue NYSHRL claims against Southerton in both her individual and official capacities.

## IV.   Notice of Claim

Defendants argue plaintiff's NYSHRL claims must be dismissed because she failed to serve a Notice of Claim in accordance with New York General Municipal Law §§ 50-e and 50-i, and New York County Law § 52.

The Court agrees as to plaintiff's claims against the County and to the extent plaintiff asserts claims against Southerton in her official capacity.

### A.   Legal Standard

"State claims brought under state law in federal court are subject to state procedural rules." Russell v. Westchester Cmty. Coll., 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017). County Law § 52, which applies in this case, provides in pertinent part:

> Any claim or notice of claim against a county . . . for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law.  Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

Section 52 thus explicitly incorporates the notice of claim requirements contained in General Municipal Law §§ 50-e and 50-i.  Section 50-e requires that a notice of claim be filed within

ninety days of the incident giving rise to the claim.  See N.Y. Gen. Mun. § 50-e.  Pursuant to

Section 50-i, a "plaintiff must plead in the complaint that:  (1) the Notice of Claim was served;

(2) at least thirty days has elapsed since the Notice of Claim was filed and before the complaint

was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the

claim."  Horvath v. Daniel, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006).  Plaintiff bears the burden

of demonstrating compliance with the notice of claim requirement.  Id.

 "Notice of claim requirements are construed strictly by New York state courts.  Failure to

comply with these requirements ordinarily requires a dismissal for failure to state a cause of

action."  Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793–94 (2d Cir. 1999).

Specifically, failure to comply with County Law Section 52 requires dismissal of state law

claims.  See Chabot v. Cnty. of Rockland, 2019 WL 3338319, at *9 (S.D.N.Y. July 25, 2019).

 B. Analysis

 Here, plaintiff does not allege she served a notice of claim on the County.  In fact,

plaintiff admits she "fail[ed] to file a timely notice of claim" but argues such failure is "not fatal

to her NYSHRL claims" because (i) the EEOC Charge gave defendants notice of plaintiff's

NYSHRL claims, and (ii) the notice of claim requirement conflicts with the "purpose" of Section

1983's "remedial objectives."  (Doc. #33 ("Opp.") at 18–19).

 First, courts in this district have held that "[a]n EEOC charge can suffice as a substitute

for a notice of claim only under the rare and limited circumstance where the EEOC charge puts

[a] school district on notice of the precise claims alleged, is served on the governing board of the

district (and not a different arm of the district), and is served within the statutory time period."

Rettino v. N.Y.C. Dep't of Educ., 2020 WL 4735299, at *5 (S.D.N.Y. Aug. 14, 2020) (emphasis

added) (considering the notice of claim requirements of N.Y. Educ. Law. § 3813, applicable to

school districts, which also must satisfy the Section 50-e requirements).  Even if this exception applied to entities beyond school districts, such as the County, plaintiff fails to qualify for it because she has not alleged she served the County with the EEOC charge, within the statutory period or otherwise.  In addition, plaintiff "has not offered any statutory support, case law, or substantive argument in favor of the proposition that [her] EEOC Charge satisfies § 50-e." Cardinali v. Cnty. of Monroe, 2016 WL 1023323, at *6 (W.D.N.Y. Mar. 8, 2016).

Second, Section 1983's "remedial objectives" (Opp. at 19), are irrelevant to New York's notice of claim requirements for NYSHRL claims.  Section 1983 is a federal cause of action, whereas the NYSHRL is a New York statute.  Plaintiff is correct that state law notice of claim provisions do not apply to Section 1983 actions pursued in state court.  See Felder v. Casey, 487 U.S. 131, 140 (1988).  But they do apply to claims under the NYSHRL.

Accordingly, plaintiff's state law claims under the NYSHRL against the County, and against Southerton in her official capacity, are dismissed.[4]

V.    Exhaustion of Retaliation Claim

The County argues plaintiff's Title VII retaliation claim must be dismissed because it is not reasonably related to plaintiff's EEOC Charge and thus, plaintiff did not exhaust her retaliation claim before the EEOC.

The Court agrees.

---

[4]      "[T]he failure to file a notice of claim does not require the dismissal of claims against municipal employees sued in their individual capacities, unless the municipality was required to indemnify the individual and the individual acted within the scope of his or her employment." Jackson v. City of New York, 2015 WL 5698535, at *18 (S.D.N.Y. Sept. 28, 2015).  Here, because defendants do not argue whether the County is required to indemnify Southerton for the conduct at issue, see id., the NYSHRL claims against Southerton in her individual capacity are not dismissed for failure to file a notice of claim.

11

A.     Legal Standard

Under Title VII, "a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (per curiam). "Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." Id.

However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 614 (2d Cir. 1999). "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Fitzgerald v. Henderson, 251 F.3d 345, 359–60 (2d Cir. 2001). The Court's "focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003). The central issue is whether the EEOC charge provided "adequate notice to investigate discrimination on both bases." Id. at 202.

B.     Analysis

Here, plaintiff has not plausibly alleged her retaliation claim is reasonably related to the claim asserted in her EEOC Charge. In the EEOC Charge, plaintiff did not check the "retaliation" box; she checked only the box for discrimination based on "race." (Doc. #26-1). Further, plaintiff did not mention retaliation in the EEOC Charge or allege she engaged in any protected conduct. Instead, plaintiff stated she and a Hispanic CNA were "discriminated against

by my employer on the basis of my race" when they were "suspended indefinitely" following an altercation with a white CNA, who was not suspended.  (Id.).

Therefore, "nothing in [plaintiff's EEOC] Charge provided the EEOC adequate notice to investigate possible retaliation."  Hoffman v. Williamsville Sch. Dist., 443 F. App'x 647, 650 (2d Cir. 2011) (summary order).  When a retaliation claim is "not raised in the [EEOC] charge," and plaintiff "did not allege any protected activity in [the] EEOC charge," a retaliation claim "is not reasonably related to the EEOC charge."  Bernard v. Care Design N.Y., 2022 WL 4484556, at *8 n. 9 (S.D.N.Y. Sept. 27, 2022) (collecting cases).  Thus, plaintiff has not exhausted her retaliation claim.

Accordingly, plaintiff's Title VII retaliation claim must be dismissed.

VI.   Timeliness

Defendants argue allegations concerning events that allegedly occurred before July 2, 2019, are not actionable with respect to plaintiff's Title VII discrimination claim because those events occurred more than 300 days before she filed her charge with the EEOC.

The Court disagrees, except as to Southerton purportedly declining to hire plaintiff in 2013.

A.   Legal Standard

A plaintiff must file a Title VII notice with the EEOC within 300 days of a defendant's alleged discriminatory acts before pursuing a Title VII claim in federal court.  42 U.S.C. § 2000e–5(e)(1); McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006).  Thus, a Title VII claim is ordinarily time-barred "if the plaintiff . . . does not file a charge with the EEOC within 300 days after the alleged unlawful employment practice."  Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 133 (2d Cir. 2003).

"[A]n employer performs a separate employment practice each time it takes adverse action against an employee, even if that action is simply a periodic implementation of an adverse decision previously made." Elmenayer v. ABF Freight Sys., Inc., 318 F.3d at 134.  Accordingly, "each discrete discriminatory act starts a new clock for filing charges alleging that act." McGuirk v. Swiss Re Fin. Servs., Corp., 2016 WL 10683305, at *9 (S.D.N.Y. June 17, 2016) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)), aff'd, 699 F. App'x 55 (2d Cir. 2017) (summary order).  Discrete discriminatory acts include "termination, failure to promote, denial of transfer or refusal to hire, as well as disparate pay, denials of accommodation and performance evaluations." McGuirk v. Swiss Re Fin. Servs., Corp., 2016 WL 10683305, at *9.  Therefore, employees may not file "charges about [prior] related discrete acts" unless "the acts are independently discriminatory and charges addressing those [prior related] acts are themselves timely filed"; however, an employee may use prior, and otherwise untimely, related acts "as background evidence in support of a timely claim." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 113.

There is, however, an exception to the 300-day limitations period, if a plaintiff shows she has experienced "a continuous practice and policy of discrimination." McGuirk v. Swiss Re Fin. Servs., Corp., 2016 WL 10683305, at *9.  In such a case, the court will "consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." Id.  Conversely, "[d]iscrete acts of discrimination . . . are not considered to be continuing violations, even if a plaintiff has experienced more than one of them over a period of time." Id.

14

B.     Analysis

Here, plaintiff filed her EEOC Charge on April 27, 2020.  Thus, her race discrimination claim must be based on events alleged to have occurred on or after July 2, 2019, unless plaintiff plausibly alleges she experienced a continuous practice and policy of discrimination.

First, plaintiff alleges defendant Southerton discriminated against her in 2013 when she initially refused to offer plaintiff a nurse position.  However, this failure to hire alleges a discrete act of discrimination which cannot be part of a continuing violation.  Moreover, because plaintiff alleges Southerton's motivation for this instance of discrimination was plaintiff's criminal history—not her race—it cannot be part of a continuous practice of racial discrimination. Accordingly, the allegation regarding defendants' purported refusal to hire plaintiff in 2013 is not actionable for purposes of plaintiff's Title VII discrimination claim.

Second, plaintiff alleges "[b]eginning in 2018" Southerton "made several comments about" plaintiff's hair, and "[t]hroughout 2019" plaintiff "experienced discrimination based on her race and/or color as an African American, endured derogatory remarks about her physical appearance, i.e.[,] her hair, [and] harassment, specifically by Hadley and other Caucasian Nurses employed by" defendants.  (Am. Compl. ¶¶ 32, 35).  Although the 2018 allegations, and potentially some of the 2019 allegations, occurred before July 2, 2019, drawing all reasonable inferences in plaintiff's favor, she plausibly alleges these acts of discrimination were part of a continuous practice or policy of racial discrimination that continued after July 2, 2019, permitting the Court to consider those events occurring before July 2, 2019.[5]

---

[5]      Even if plaintiff's allegations of discriminatory events in 2018 and some of 2019 were not actionable under Title VII, the Court could consider those events as background evidence supporting plaintiff's Title VII discrimination claim regarding the 2020 Incident, defendants' suspension of plaintiff on January 6, 2020, and defendants' termination of plaintiff's

Accordingly, plaintiff's Title VII race discrimination claim arising from defendants' discriminatory remarks and harassment during 2018 and 2019 is timely.

VII.    Race Discrimination Claims

Defendants argue plaintiff's race discrimination claims—against the County under Title VII and against Southerton, in her individual capacity, under the NYSHRL—must be dismissed because plaintiff did not allege any facts plausibly demonstrating her termination was motivated by discriminatory intent.

The Court disagrees.

A.    Legal Standard

Discrimination claims under Title VII and the NYSHRL are analyzed identically.  Hyek v. Field Support Servs., Inc., 461 F. App'x 59, 60 (2d Cir. 2006) (summary order).

To survive a motion to dismiss, a plaintiff claiming race discrimination "must plausibly allege that (1) the employer took adverse action against [her] and (2) [her] race . . . was a motivating factor in the employment decision."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015).

A plaintiff satisfies the first prong by alleging an adverse employment action, which entails "a materially adverse change in the terms and conditions of employment."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 85.

As to the second prong, "at the pleadings stage of an employment discrimination case, a plaintiff has a minimal burden of alleging facts suggesting an inference of discriminatory motivation."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 85.  Namely, "a plaintiff

---

employment on September 29, 2020.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 113.

must allege that the employer took adverse action against her at least in part for a discriminatory

reason, and she may do so by alleging facts that directly show discrimination or facts that

indirectly show discrimination by giving rise to a plausible inference of discrimination." Id. at

87.   Examples of scenarios in which an inference of discrimination could arise include "the

employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious

comments about others in the employee's protected group; or the more favorable treatment of

employees not in the protected group[;] or the sequence of events leading to the plaintiff's

discharge." Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015).

      B.    Analysis

      Here, plaintiff's allegations satisfy the minimal burden necessary to state a race

discrimination claim.

      First, at this early stage of the case, plaintiff has sufficiently alleged an adverse

employment action because she claims defendants suspended and terminated her from her job

because of their alleged racial discrimination.

      Second, plaintiff sufficiently alleges that race was a motivating factor for both of

defendants' actions, i.e., the County filing civil service charges against her, and the County

suspending and terminating her employment.  In particular, plaintiff alleges (i) defendants

"unlawfully discriminated against her on the basis of her race and/or color by treating her along

with Hispanic Nurses less favorably in her terms and conditions of employment than Caucasian

Nurses, [and] ignoring her complaints opposing discrimination and harassment by Caucasian

Registered Nurses" (Am. Compl. ¶ 3); (ii) after the 2020 Incident, the County brought civil

service charges against plaintiff "and several other Hispanic and African American Nurses as a

result of the incident in January 2020" but did not bring civil service charges against Hadley,

who is Caucasian and allegedly was "the aggressor" (id. ¶¶ 52–54); and (iii) defendants brought

the civil service charges against plaintiff "to facilitate her unlawful termination after an

altercation with Caucasian Nurse and co-worker" Hadley.  (Id. ¶ 3).  These allegations, taken as

true, are sufficient to "give plausible support to a minimal inference of discriminatory

motivation" for plaintiff's Title VII race discrimination claims.  Littlejohn v. City of New York,

795 F.3d at 311.

Although defendants proffered documents purporting to show plaintiff was suspended

and terminated for cause following a civil service hearing—which could tend to show defendant

would have made the same decision absent any impermissible discriminatory motives—these

documents are neither incorporated by reference in, nor integral to, the amended complaint.

Thus, the Court may not consider them in deciding the instant motion to dismiss.

Moreover, plaintiff alleges other "facts that indirectly show discrimination by giving rise

to a plausible inference of discrimination."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d

at 87 (emphasis added).

For example, plaintiff alleges she "experienced discrimination based on her race and/or

color as an African American, endured derogatory remarks about her physical appearance i.e.[,]

her hair" and Southerton "made several comments" about plaintiff's hair, including that "she did

not like Plaintiff's hair in braids and that she likes 'real' hair better."  (Am. Compl. ¶¶ 32, 35).

See Gurley v. David H. Berg & Assocs., 2022 WL 309442, at *4 (S.D.N.Y. Feb. 2, 2022) ("Two

other circuits and a court in this District have acknowledged the potential discriminatory intent

behind comments regarding natural Black hair") (citing Rogers v. Am. Airlines, Inc., 527 F.

Supp. 229, 232 (S.D.N.Y. 1981)).  Further, during plaintiff's "first shift on Unit Four" she

allegedly was informed that Caucasian employees "did not want to work with" plaintiff and

"referred to her as a 'bitch.'"  (Am. Compl. ¶ 34).  The Caucasian nurses purportedly continued

to make comments "under their breath while looking at" plaintiff which made her "very

uncomfortable" and led her to complain to the staffing coordinator and other supervisors and

management about "the on-going racial discrimination and harassment she was experiencing."

(Id. ¶¶ 36, 38, 41).  Nevertheless, according to plaintiff, defendants did nothing and she

"remained assigned to work on Unit Four with her harassers."  (Id. ¶ 39).

In addition, plaintiff alleges Southerton "showed preferential treatment" to Caucasian

employees, "for example, only allowing Caucasian employees to wear their nails long while at

work" while Southerton "admonished African American and Hispanic employees" that wore

long nails as "against company policy."  (Am. Compl. ¶ 43).  Southerton also purportedly made

"derogatory comments" to plaintiff "such as 'don't be ghetto' and 'we don't do ghetto shit

here.'"  (Id. ¶ 44).  These allegations satisfy plaintiff's minimal burden to plead facts from which

the Court can infer race was a motivating factor in defendants' decisions to suspend and

terminate plaintiff's employment.

Accordingly, plaintiff's race discrimination claims under Title VII against the County,

and under the NYSHRL against Southerton, in her individual capacity, shall proceed.

VIII.   Hostile Work Environment Claim

Southerton, in her individual capacity, argues plaintiff's hostile work environment claim

under the NYSHRL must be dismissed because plaintiff "does not plausibly allege the existence

of an environment that meets the standard of discrimination."  (Doc. #30 ("Defs. Mem.") at 15).[6]

The Court disagrees.

---

[6]     In the amended complaint, plaintiff only alleges a hostile work environment claim in
violation of the NYSHRL, not Title VII.  (See Am. Compl. ¶ 79).

A.    <u>Legal Standard</u>

In 2019, the NYSHRL was amended to impose a less stringent standard for hostile work environment claims than the standard under Title VII, similar to the standard under the New York City Human Rights Law.  <u>Wellner v. Montefiore Med. Ctr.</u>, 2019 WL 4081898, at *5 n. 4 (S.D.N.Y. Aug. 29, 2019).[7]

To state such a claim, a plaintiff "must allege that she or he has been subjected to inferior terms, conditions, or privileges of employment because of his or her protected status under the amended NYSHRL; or she or he has been treated less well than other employees because of her or his protected status."  <u>Alford v. NFTA-Metro</u>, 2022 WL 17655868, at *6 (W.D.N.Y. Sept. 6, 2022).  However, a claim for hostile work environment under the NYSHRL "will not succeed if the offending actions are no more than petty slights or trivial inconveniences."  <u>Id</u>.

Beyond the requirements for individual liability under the NYSHRL, as discussed in Section III.B. <u>supra</u>, an employer is liable only for the discriminatory conduct of the employee when such conduct is "encouraged, condoned, or [expressly or impliedly] approved" by the employer.  <u>See</u> <u>State Div. of Hum. Rts. Ex rel. Green v. St. Elizabeth's Hosp.</u>, 66 N.Y.2d 684,

---

[7]    The amendments to the NYSHRL became effective on October 11, 2019, and apply only to claims that accrue on or after that date.  <u>See</u> <u>Maiurano v. Cantor Fitzgerald Secs.</u>, 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021).  Here, pursuant to the continuing violations doctrine, because plaintiff's hostile work environment claim is partly based on events that occurred in late 2019 and early 2020, the Court determines plaintiff's hostile work environment claim accrued after October 11, 2019.  <u>See, e.g.</u>, <u>Smith v. City of New York</u>, 554 F. App'x 45, 47 (2d Cir. 2016) (summary order) ("[T]he continuing violation doctrine is limited to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment—such as hostile work environment claims—and, when the doctrine does apply, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim."); <u>Drew v. Plaza Constr. Corp.</u>, 688 F. Supp. 2d 270, 279 (S.D.N.Y. 2010) ("[I]f [plaintiff] alleges acts contributing to the hostile work environment—a single unlawful employment practice—that occurred within the statutory limitation period, then the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

687 (1985).  "Condoning" discriminatory conduct "contemplates a knowing, after-the-fact forgiveness or acceptance of an offense," which may entail "calculated inaction in response to discriminatory conduct."  Id.

B.     Analysis

Here, plaintiff has plausibly alleged a hostile work environment claim against Southerton based on Southerton's own treatment of plaintiff, and her condonation of other employees' treatment of plaintiff.

Plaintiff alleges Southerton directly made derogatory comments to plaintiff about her braided hair as opposed to Southerton's preference for "real" hair, told plaintiff not to "be ghetto," and admonished only minority nurses for wearing long nails at work.  (Am. Compl.¶¶ 32, 43–44).  Drawing all inferences in plaintiff's favor, these allegations suggest Southerton treated plaintiff less well than white employees, because of her race.

In addition, plaintiff alleges other white nurses expressed that they did not want to work with plaintiff and "made comments under their breath" while looking at her (Am. Compl. ¶ 36), and that plaintiff "endured derogatory remarks about her physical appearance, i.e.[,] her hair, [and] harassment, specifically by Hadley and other Caucasian Nurses."  (Id. ¶ 35).  Plaintiff's allegations, taken together, support the inference that these comments were based on plaintiff's race, a protected characteristic.  Further, plaintiff alleges she complained to the Care Center's staffing coordinator, who told plaintiff he "would speak with" Southerton, and that plaintiff later "complained to other supervisors and members of management again" about the unfair treatment she was enduring, yet nothing was done to address plaintiff's complaints.  (Id.  ¶¶ 37–39, 41).  Drawing all reasonable inferences in plaintiff's favor, these allegations support the conclusion that Southerton—whom plaintiff plausibly alleges is considered an "employer" under the

NYSHRL (see Section III.B. supra)—engaged in "calculated inaction in response to discriminatory conduct" and thus condoned white nurses' discriminatory conduct towards plaintiff.  See State Div. of Hum. Rts. Ex rel. Green v. St. Elizabeth's Hosp., 66 N.Y.2d 684, 687 (1985).

Accordingly, plaintiff's NYSHRL hostile work environment claim against Southerton, in her individual capacity, may proceed.

IX.    Aiding and Abetting Race Discrimination Claim

Southerton, in her individual capacity, argues plaintiff fails to state a claim against her for aiding and abetting race discrimination.

The Court agrees, and finds this claim must be dismissed as duplicative.

"Under the NYSHRL . . . , individuals may not be held liable merely for aiding and abetting [her] own discriminatory conduct but only for assisting another party in violating that law."  Singhal v. Doughnut Plant, Inc., 2022 WL 976885, at *5 (S.D.N.Y. Mar. 31, 2022). Because plaintiff alleges, and the Court has upheld, a non-derivative NYSHRL race discrimination claim against Southerton, she cannot aid and abet her own actions.

Accordingly, plaintiff's aiding and abetting claim under the NYSHRL must be dismissed.

X.    Section 1983 Claim

The County argues plaintiff's Section 1983 claims against it must be dismissed because she fails to state a claim pursuant to the requirements of Monell v. Department of Social Services, 436 U.S. 658 (1978) ("Monell").

The Court disagrees, based on plaintiff's claim that the County had a policy or practice of failing to supervise nurses.  Plaintiff's other theories of Monell liability fail.

A.     Legal Standard

"Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, protects public employees from various forms of discrimination, including hostile work environment and disparate treatment on the basis of race."  Littlejohn v. City of New York, 795 F.3d at 321.

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury."  436 U.S. at 694. Thus, to assert a Section 1983 claim against a municipality, the plaintiff must allege the existence of an official policy or custom causing injury and a direct causal connection between the policy or custom and the deprivation of a constitutional right.  Jones v. Town of East Haven, 691 F.3d 72, 80–81 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:  (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."  Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

Further, a plaintiff may show that a constitutional violation represents the "policy or custom" of the municipality under Monell by demonstrating that "a policymaking official

ordered or ratified the employee's actions—either expressly or tacitly."  Jones v. Town of East Haven, 691 F.3d at 81.  "[T]o state a Monell claim premised on ratification, a plaintiff must plausibly allege that the unconstitutional conduct which the municipal policymaker ratified was part of a pattern of constitutionally offensive acts, rather than an isolated event."  Wilson v. Cnty. of Ulster, 2022 WL 813958, at *14 (N.D.N.Y. Mar. 17, 2022).

"Where, however, [Monell] liability is premised on the policymaker's approval of a subordinate's unlawful act, it must be shown that the policymaker ratified the subordinate's decision and the basis for it, as municipalities cannot be liable on a theory of respondeat superior."  Davis v. City of New York, 75 F. App'x 827, 829 (2d Cir. 2003) (summary order). Further, "there must be well-pleaded allegations in the complaint supporting the inference that the [municipality] employed a policy of ratifying the unlawful conduct of its officers:  a single instance of ratification is insufficient."  Wilson v. Cnty. of Ulster, 2022 WL 813958, at *16.

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of" Bell Atlantic Corp. v. Twombly, 550 U.S. at 572, and Ashcroft v. Iqbal, 556 U.S. at 678.  See Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (quoting Leatherman v. Tarrant Cnty. Narcotics Intel. and Coordination Unit, 507 U.S. 163, 168 (1993)).  "In other words, boilerplate allegations will not suffice."  Id.  "The allegations that [a defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient."  Missel v. Cnty. of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order).

B.    Analysis

Here, plaintiff alleges it was the policy and custom of the County to (i) "[d]iscriminat[e] against African American nurses by denying them hire"; (ii) fail "to properly train Nurses . . . to prevent harassment of non-Caucasian Nurses"; (iii) fail "to properly supervise Nurses specifically those assigned to work on Unit Four"; and (iv) subject "County employees to violations of their constitutionally protected rights as well as rights guaranteed by the State." (Am. Compl. ¶ 96).  Further, she alleges these policies and customs "may be inferred" from the actions taken by the County and Southerton.  (Id. ¶ 97).

1.    Constitutional Injury

Although plaintiff does not invoke a specific constitutional provision, drawing all reasonable inferences in her favor, in light of plaintiff's allegations about racial discrimination and the County's purported violations of employees' constitutional rights, the Court construes plaintiff's Section 1983 claim as seeking to hold the County liable for a violation of equal protection under the Fourteenth Amendment.

2.    Policy or Custom

As an initial matter, plaintiff has plausibly alleged Southerton was a policymaker, as she was "the Acting Administrator in charge of hiring Nurses to work for" the County and Care Center "with all the actual and/or perceived/apparent authority granted, allotted and entrusted to her" by them.  (Am. Compl. ¶ 10).

a.    Failing to Hire

In support of plaintiff's claim that the County had a policy or practice of discriminating against African American nurses by failing to hire them, plaintiff solely alleges that in 2013, Southerton initially refused to hire plaintiff.  However, "[t]he statute of limitations for claims

brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). Accordingly, to the extent plaintiff's Section 1983 claim is based on defendants' failure to hire African American nurses, such claim is untimely.

> b.  Failing to Train Nurses

Plaintiff's allegation that the County acted with "deliberate indifference" to her constitutional rights by failing adequately to train nurses "to prevent harassment of non-Caucasian" nurses like plaintiff, is a "boilerplate assertion" which does not "allege a specific deficiency in the municipality's training," and is thus insufficient to state a claim for municipal liability. See Rivera v. Westchester Cnty., 488 F. Supp. 3d 70, 78 (S.D.N.Y. 2020).

> c.  Subjecting Employees to Constitutional Violations

Plaintiff's claim that the County maintained a custom and practice to subject "County employees to violations of their constitutionally protected rights as well as rights guaranteed by the State" also fails plausibly to allege Monell liability. (Am. Compl. ¶ 96). This vague allegation does not "challenge an express rule or regulation" or a "challenged practice [that] was so persistent and widespread as to constitute a custom or usage," and is thus insufficient. See Green v. Dep't of Educ. of the City of New York, 16 F.4th 1070, 1077 (2d Cir. 2021) ("[A] general and conclusory allegation of a municipal policy or custom fails to state a plausible claim.").

> d.  Failing to Supervise Nurses

However, plaintiff's allegation that the County acted with "deliberate indifference" by purportedly failing properly to supervise nurses, "specifically those assigned to work on Unit Four" who purportedly made comments about plaintiff, satisfies the requirements of Monell.

26

(Am. Compl. ¶¶ 96, 98).  Plaintiff alleges she "experienced discrimination based on her race and/or color as an African American" on multiple occasions and "endured derogatory remarks about her physical appearance" by Caucasian nurses in Unit Four which made plaintiff feel "very uncomfortable."  (Id. ¶¶ 34–36).

Further, plaintiff alleges she reported these incidents to Southerton and other managers, who did nothing to supervise the Unit Four nurses and instead, plaintiff "remained assigned to work on Unit Four with her harassers."  (Am. Compl. ¶¶ 37–39, 41).  Drawing all reasonable inferences in plaintiff's favor, although it is a close call, plaintiff has plausibly alleged Southerton, a policymaker, "had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious" and yet "fail[ed] to investigate or rectify the situation" by failing to supervise the Unit Four nurses, despite plaintiff's multiple alleged complaints about their racial discrimination.  See O'Kane v. Plainedge Union Free Sch. Dist., 827 F. App'x 141, 143 (2d Cir. 2020) (summary order) ("Deliberate indifference is not demonstrated on every occasion that a plaintiff has reported potential rights violations to a policymaker:  rather, constitutionally cognizable deliberate indifference is a 'stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'") (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)).

Accordingly, plaintiff's Section 1983 claim against the County may proceed, but only as to the County's purported custom or practice of failing adequately to supervise nurses.

XI.    Supplemental Jurisdiction

Defendants argue the Court should dismiss or decline to exercise supplemental jurisdiction over plaintiff's state law claims if the Court dismisses plaintiff's federal claims.

Here, however, because plaintiff's race discrimination claim under Title VII and her

Monell claim with respect to failing to supervise nurses survive, the Court has supplemental

jurisdiction over plaintiff's state law claims.  28 U.S.C. § 1367(c)(3) (A district court may

decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all

claims over which it has original jurisdiction."); Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d

118, 122 (2d Cir. 2006).

**CONCLUSION**

The motion is GRANTED IN PART and DENIED IN PART.

Plaintiff's race discrimination claim under Title VII against the County shall proceed, except with respect to Southerton's alleged failure to hire plaintiff in 2013.

Plaintiff's race discrimination and hostile work environment claims under the NYSHRL against Southerton, in her individual capacity, shall proceed.

Plaintiff's <u>Monell</u> claim against the County with respect to the alleged policy of failing to supervise nurses shall proceed.

All of plaintiff's other claims are dismissed.  The Sullivan County Care Center is dismissed as a defendant in this action.

By June 5, 2023, defendants shall file an answer to the amended complaint.  By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the Sullivan County Care Center as a defendant in this action.  The Clerk is further instructed to terminate the pending motion.  (Doc. #29).

Dated:  May 22, 2023
      White Plains, NY

                SO ORDERED:

                Vincent L. Briccetti
                United States District Judge