UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
LATOYA SNOWDEN,
              Plaintiff,

v.

COUNTY OF SULLIVAN,
              Defendant.
--------------------------------------------------------------x

**OPINION AND ORDER**

22 CV 514 (VB)

Briccetti, J.:

Plaintiff Latoya Snowden brings this employment discrimination action against defendant the County of Sullivan (the "County") under Title VII of the Civil Rights Act of 1964, alleging the County discriminated against her on the basis of race.[1]

Now pending is defendant's motion for summary judgment. (Docs. ##78, 79). For the reasons set forth below, the motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted briefs, statements of material fact pursuant to Local Civil Rule 56.1, and declarations with exhibits. These submissions reflect the following factual background.

I.     Plaintiff's Employment

In 2013, plaintiff, a Black woman, began working as a Certified Nurse Assistant ("CNA") at the Care Center in Liberty, New York, a nursing home operated by the County. In

---

[1] By letter dated February 29, 2024, plaintiff "agree[d] to forego her Monell claim against Sullivan County," (Doc. #73) (the Fifth Cause of Action), although the parties have not submitted a stipulation of dismissal as to that claim. The parties must do so, as instructed below. All other claims and defendants have previously been dismissed. (Doc. #41 at 29; Doc. #75).

1

her role, plaintiff assisted nursing home residents with their daily activities, such as bathing, feeding, and grooming.  Plaintiff worked at the Care Center until her suspension in January 2020 and termination in September 2020.

II.     The Allegedly Discriminatory Behavior

Plaintiff claims that soon after she began working at the Care Center, Susan Southerton, the Acting Administrator and Director of Nursing, began commenting every few months on plaintiff's hair.  At the time, plaintiff wore extensions in her hair, and plaintiff testified Southerton told her "I don't like your fake hair, you should wear your real hair."  (Doc. #82-2 ("Pl. Dep.") at 13–14).  In addition, plaintiff claims Southerton commented three times that her fake fingernails were too long but never made similar comments to other nurses, even though "everybody else had them."  (Id. at 23).  On another occasion, around two years after plaintiff began working at the Care Center, plaintiff testified Southerton told plaintiff she was "acting too ghetto."  (Id. at 28–30).  Although plaintiff disliked these comments, she did not report or otherwise object to them because she feared Southerton would retaliate against her.  (Id. at 87).

Plaintiff contends other non-white employees were "singled out" and charged more often than white employees with disciplinary violations.  (Doc. #82-4 ("Hearing Tr.") at 214–18).  Plaintiff also contends Southerton showed preferential treatment to white employees.  Like plaintiff, other non-white employees similarly chose not to report issues involving Southerton to avoid negatively impacting their jobs.  (Pl. Dep. at 94–95).

In November 2019, plaintiff was assigned to a different floor of the Care Center, referred to as "Unit Four."  During her first shift, plaintiff learned that two white nurses on Unit Four, Rachel Hadley and Michelle Fortin, did not want plaintiff transferred to their floor and referred to plaintiff as a "bitch."  (Pl. Dep. at 42).  According to plaintiff, Hadley and Fortin would make

remarks under their breath while looking at plaintiff and refused to work with her.  (Id. at 115–16).  Plaintiff also claims she heard them say they did not like Black people.

Plaintiff eventually complained to Southerton, as well as to staffing coordinator Jason Conroy and plaintiff's immediate supervisor Jennifer Tompkins, about Hadley and Fortin's behavior, and requested in writing that Conroy relocate her to a different floor.  During a meeting with Conroy, plaintiff began crying while she described feeling uncomfortable on Unit Four and how the other CNAs did not want to work with her.  Despite her efforts, plaintiff was not reassigned.  Thereafter, plaintiff began arriving late to work to avoid working on Unit Four.

On November 24, 2019, plaintiff had an argument with another nurse, Raymaresa Smith, regarding plaintiff's tardiness (the "2019 Incident").  Smith claimed plaintiff threatened to "put her hands" on Smith "outside" the Care Center and followed her.  According to plaintiff, however, she neither threatened nor followed Smith, and instead suggested they continue the conversation at a later point outside the facility to avoid disturbing the nursing home residents.

On January 6, 2020, several nurses, including plaintiff, were involved in an incident in the parking lot of the Care Center (the "2020 Incident").  According to plaintiff, she and another nurse, Maria Cruz, were outside on a break when Hadley approached Cruz and began yelling at her.  Hadley called Cruz a "bitch" and "hood booger," accused her of having "fucked [her] man," and began removing her earrings.  (Pl. Dep. at 60).  Plaintiff contends she tried to intervene and calm Hadley down, Cruz ignored Hadley, and no physical altercation occurred.  Plaintiff spoke to the police after they were called to the scene, and informed Tompkins she did not want to work with Hadley and did not want to work on Unit Four that night.

Shortly after the 2020 Incident, plaintiff and Cruz were suspended with pay from working at the Care Center.  No disciplinary action was taken against Hadley.  (Hearing Tr. at 237).

Plaintiff also testified that, on an unknown date, Hadley threatened to "choke" Cruz in front of a house manager, and although the incident was reported, Hadley was not disciplined. (Pl. Dep. at 120).

III.   Plaintiff's Termination

On April 24, 2020, plaintiff was served with civil service charges alleging she had violated the County's policies against Workplace Violence Prevention and Discrimination and Discriminatory Harassment. (Doc. #79-3 at ECF 1–2).[2] Southerton testified she spoke with County personnel and came to the "joint decision" to pursue these charges against plaintiff. (Doc. #79-11 at 55–56). On April 27, 2020, plaintiff was suspended without pay. (Doc. #79-3 at ECF 1).

On August 25, 2020, a New York Civil Service Law Section 75 Hearing (the "Section 75 Hearing") was held before a hearing officer. The County called several witnesses, including Hadley and Smith, who testified about the 2019 and 2020 Incidents. Plaintiff then testified in her own defense about the two incidents, her friendship with Cruz, and the racially discriminatory treatment she experienced at the Care Center. Plaintiff also called Cruz as a witness, who testified regarding the 2020 Incident and spoke about the "bad blood" between herself and Hadley due to their prior relationship with the same man. (Hearing Tr. at 225). Southerton was not called as a witness.

On September 24, 2020, the hearing officer issued a seven-page report recommending plaintiff's termination for violating the County's workplace violence and harassment policies. (Doc. #79-5).

---

[2]   "ECF __" refers to page numbers automatically assigned by the Court's Electronic Filing System.

On September 29, 2020, Stephanie M. Brown, the appointing authority for plaintiff's position, sent plaintiff a letter informing her that Brown adopted the hearing officer's report and recommendation and found plaintiff guilty of all charges, and that plaintiff was terminated from the Care Center.  (Doc. #79-8).

IV.     Plaintiff's EEOC Charge

On April 27, 2020, plaintiff submitted a Charge of Discrimination (the "EEOC Charge") to the Equal Employment Opportunity Commission ("EEOC").  (Doc. #26-1).  In the EEOC Charge, plaintiff asserted she was discriminated against on the basis of race because she and Cruz were suspended following the 2020 Incident, but Hadley was not.

On October 27, 2021, plaintiff received a "Notice of Suit Rights" from the EEOC.  (Doc. #26-1 at ECF 5).  Plaintiff thereafter commenced this action.

## DISCUSSION

I.      Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[3]

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

3       Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).  Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Title VII Race Discrimination Claim

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  When, as here, a plaintiff's Title VII discrimination claims are based on circumstantial evidence of discriminatory intent, the claims are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Porter v. Dartmouth-Hitchcock Med. Ctr., 92 F.4th 129, 149 (2d Cir. 2024).

Under the McDonnell Douglas framework, a plaintiff establishes a prima facie case of discrimination by demonstrating "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002). The plaintiff bears the burden of proving a prima facie case by a preponderance of the evidence. Id. "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998). Once a plaintiff presents a prima facie case, the defendant then bears the burden of articulating a legitimate, non-discriminatory reason for the employment action. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude the employer's explanation is merely a pretext for actual discrimination. Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981).

A.   Prima Facie Case

As a threshold matter, it is undisputed that (i) plaintiff is a member of a Title VII protected class; (ii) plaintiff was qualified for her position; and (iii) her suspension and termination constitute adverse employment actions.

Defendant contends plaintiff has not met the fourth prima facie element because there is no evidence to support an inference that her termination was due to her race.

The Court agrees as to plaintiff's termination, but finds that plaintiff's suspension—which also constitutes an adverse employment action—does support an inference of discrimination.

A plaintiff satisfies the fourth prong of a prima facie case of discrimination by demonstrating "circumstances surrounding that action giving rise to an inference of discrimination." Collins v. N.Y.C. Transit Auth., 305 F.3d at 118. "One way to create an inference of discrimination is to show that similarly situated employees, outside plaintiff's protected class, were treated preferentially." Campbell v. Alliance Nat. Inc., 107 F. Supp. 2d 234, 244 (S.D.N.Y. 2020). To qualify as similarly situated, the employees must be "subject to the same performance evaluation and discipline standards" and must have "engaged in comparable conduct." Ruiz v. Cnty. of Rockland, 609 F.3d 486, 493–94 (2d Cir. 2010). "The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." Id.

The parties focus on whether plaintiff's termination following a recommendation by the Section 75 hearing officer gives rise to an inference of discrimination. As defendant argues, this termination following the recommendation of a neutral hearing officer is a legitimate justification for plaintiff's termination, and plaintiff has pointed to no evidence that the hearing officer's justification was pretextual.

However, the decision to suspend plaintiff without pay and recommend her for Section 75 charges, which was made at least in part by Southerton, supports an inference of discrimination. A suspension without pay is an adverse employment action under Title VII. Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001). Moreover, plaintiff's initial suspension (with pay) and the decision to bring civil service charges against her (resulting in her suspension without pay) arose in the aftermath of the 2020 Incident, in which only the Black and Hispanic nurses were disciplined, and the white nurse was not, despite

evidence the white nurse had engaged in conduct of "comparable seriousness." McDonnell Douglas Corp. v. Green, 411 U.S. at 804.  Defendant asserts there is "no evidence in the record" to support an inference of discrimination, but notably fails to address this disciplinary discrepancy following the 2020 Incident.

Therefore, viewing the facts in the light most favorable to the non-moving party, plaintiff has met her "minimal" burden of establishing a prima facie case of discrimination under Title VII.  See Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999) (inference of discrimination arises when individual of one race is treated less favorably than those of another race who are similarly situated).

      B.      Non-Discriminatory Reason for Plaintiff's Suspension

At the second step of the McDonnell Douglas analysis, defendant bears the burden of proffering a legitimate, non-discriminatory reason for plaintiff's suspension.  Plaintiff was suspended with pay shortly after the 2020 Incident and was suspended without pay in April 2020 after disciplinary charges were filed against her.

Defendant argues that plaintiff's disciplinary record constitutes a legitimate, non-discriminatory reason for the adverse employment actions.  Following plaintiff's hearing on the Section 75 charges, plaintiff was found to have violated the County's policies against workplace violence and harassment and was terminated shortly thereafter.  It is well settled that "[v]iolations of employer policy are legitimate, nondiscriminatory reasons for adverse actions." Smith v. N.Y. Presbyterian Hosp., 440 F. Supp. 3d 303, 335 (S.D.N.Y. 2020) (citing Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 65 (2d Cir. 1997)).  Although defendant principally argues that plaintiff's policy violation justifies her termination, it also contends plaintiff "was treated differently because of her actions."  (Doc. #80 at ECF 11).  To the extent defendant

argues plaintiff's suspension was due to her involvement in the 2020 Incident, and that such actions violated employer policy, defendant has proffered a legitimate, non-discriminatory reason for plaintiff's suspension.

C. Pretext

At the third step of the McDonnell Douglas analysis, a plaintiff must present "sufficient admissible evidence from which a rational finder of fact could infer that more likely than not she was the victim of intentional discrimination." Bickerstaff v. Vassar Coll., 196 F.3d 435, 447 (2d Cir. 1999). A plaintiff "is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995). Plaintiff must "produce admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Bart v. Golub Corp., 96 F.4th 566, 576 (2d Cir. 2024) (emphasis added).

"In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Weinstock v. Columbia Univ., 224 F.3d at 42. Indeed, "a plaintiff's evidence at the third step of the McDonnell Douglas analysis must be viewed as a whole rather than in a piecemeal fashion." Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 76 (2d Cir. 2016).

Although plaintiff was suspended following her involvement in the 2020 Incident, she has adduced sufficient—if thin—evidence to create an issue of material fact as to whether the County's reason for her suspension was pretextual. To satisfy the burden of showing pretext on summary judgment, a plaintiff "need only show that the employer's stated reason—even if true

10

or factually accurate—was not the real reason, in the sense that it was not the <u>entire</u> reason due to a coexisting impermissible consideration." <u>Bart v. Golub Corp.</u>, 96 F.4th at 575.  Here, plaintiff has presented enough evidence of discriminatory practices at the Care Center, including derogatory remarks about plaintiff's appearance and behavior, discriminatory treatment by white employees, and preferential treatment of white nurses, that predate the incidents underlying her suspension.

Viewed in isolation, the derogatory comments—including Southerton's comments that plaintiff acted "ghetto" and implications that she disliked plaintiff's hair because it was not "real" hair (Pl. Dep. at 22–23, 30)—could be considered "stray remarks," which by themselves "do not constitute sufficient evidence to make out a case of employment discrimination." <u>Danzer v. Norden Sys., Inc.</u>, 151 F.3d 50, 56 (2d Cir. 1998).  However, because these remarks were not the only indicia of discrimination, they must be considered in the context of other evidence of discriminatory treatment by plaintiff's supervisors and other nurses.  <u>Id</u>.  ("When other indicia of discrimination are properly presented, the remarks can no longer be deemed stray, and the jury has a right to conclude that they bear a more ominous significance.").  Given the evidence of discriminatory practices prior to the incidents defendant argues predicated plaintiff's suspension, a reasonable jury could find defendant's proffered reason for suspending plaintiff—namely, her disciplinary record—was not the entire reason for plaintiff's suspension.

Moreover, discriminatory intent could be inferred because Southerton, together with other County personnel, decided to suspend plaintiff and to pursue Section 75 charges against her.  "Where the adverse decision is made by two or more persons, some of whom are motivated by discrimination, while others are motivated by other reasons," a reasonable jury may find discriminatory intent despite an employer's legitimate, non-discriminatory explanation.  <u>Henry v.</u>

Wyeth Pharms., Inc., 616 F.3d 134, 157 (2d Cir. 2001).  Indeed, "a Title VII plaintiff is entitled to succeed, even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the process." Holcomb v. Iona Coll., 521 F.3d 130, 143 (2d Cir. 2008).  Here, a reasonable jury could determine that Southerton was motivated by an impermissible bias and played a "meaningful role" in plaintiff's suspension, despite the involvement of other County personnel. See Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999) ("We recognize that the impermissible bias of a single individual at any stage of the process may taint the ultimate employment decision in violation of Title VII.").

      Finally, in the report and recommendation following the Section 75 Hearing, the hearing officer observed that plaintiff "brought up several allegations of discrimination against her" at the Care Center.  (Doc. #79-5 at ECF 5).  Although the hearing officer concluded the allegations were relevant to the proceeding, she did not hear testimony or view any evidence substantiating the discrimination claims, aside from plaintiff's own testimony.  Therefore, the Section 75 Hearing did not include "substantial evidence" of plaintiff's discrimination allegations such that the hearing officer's conclusion is "probative of the absence of discriminatory intent" in the adverse employment action.  Collins v. N.Y.C. Transit Auth., 305 F.3d at 119.  Together with the evidence of other race-based discrimination, a reasonable jury could conclude defendant's proffered reason for suspending plaintiff was pretextual, and that plaintiff was suspended, at least in part, because of her race.  See Holcomb v. Iona Coll., 521 F.3d 130, 141–42 (2d Cir. 2008).

      To the extent defendant argues plaintiff's own testimony cannot create a genuine issue of material fact as to pretext, the Court disagrees.  Unless a plaintiff's testimony is contradictory, incomplete, self-serving, or so replete with inconsistencies that no reasonable jury could credit it,

the testimony may be used to create a genuine issue of material fact.  See Bellamy v. City of New York, 914 F.3d 727, 746 (2d Cir. 2019).  Here, plaintiff's deposition testimony is not so replete with inconsistencies and improbabilities that a reasonable jury could not credit it.  Thus, plaintiff's testimony may be used to create a genuine issue of fact.  See Verne v. N.Y.C. Dep't of Educ., 697 F. Supp. 3d 30, 50 n.6 (S.D.N.Y. 2023).

In sum, viewing the evidence as a whole and construing the facts in plaintiff's favor, there are several genuine issues of material fact that are central to the County's motivation in suspending plaintiff.  Accordingly, summary judgment on plaintiff's discrimination claim is inappropriate.

## CONCLUSION

The motion for summary judgment is DENIED.

Plaintiff's race discrimination claim under Title VII against the County with respect to her suspension survives, but her race discrimination claim under Title VII with respect to her termination is dismissed.

The Court will conduct a case management conference on **December 18, 2024, at 10:00 a.m.**, to be held at the White Plains courthouse, Courtroom 620, at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case.

In addition, by December 9, 2024, the parties shall submit a stipulation of voluntary dismissal as to plaintiff's Monell claim against the County.

The Clerk is instructed to terminate the motion.  (Docs. ##78, 79).

Dated: November 25, 2024
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge